IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

4:23 pm, 4/26/12

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| BRYCE H. ERICKSON, ) | Case No.  11-20066 |
| ) | Chapter 12 |
| Debtor. ) | |

### OPINION DENYING CONFIRMATION OF THE THIRD AMENDED CHAPTER 12 PLAN DATED JANUARY 27, 2012

On April 5, 2012, this matter came before the court for an evidentiary hearing on the confirmation of the Third Amended Chapter 12 Plan ("Third Amended Plan") dated January 27, 2012 filed by Bryce H. Erickson ("Debtor") and the objections filed by Sirius, LC ("Sirius") and the Chapter 12 Trustee, Mark Stewart ("Trustee"). Having reviewed the testimony, evidence and applicable law the court denies confirmation of the Third Amended Plan.

### Jurisdiction

The court has jurisdiction over this adversary complaint pursuant to 28 U.S.C. §§157(a) and 1334(a). This is a core proceeding under §157(b)(2)(L). The motion for confirmation is brought pursuant to 11 U.S.C. §1201 *et seq.*[1]

### Findings of Fact

The Debtor filed his chapter 12 bankruptcy petition on January 26, 2011. On March 28, 2011, the Debtor requested and was granted additional time to file his chapter 12 plan of reorganization. On April 28, 2011, the Debtor filed his initial plan.

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

Confirmation of the initial plan was denied on June 14, 2011. On July 18, 2011, the Debtor filed his first amended plan. The court held a preliminary hearing by telephone and upon consideration determined that an evidentiary hearing would be necessary. On October 5, 2011, the court held an evidentiary hearing and denied confirmation of the first amended chapter 12 plan by the order entered on October 7, 2011. On November 7, 2011, Debtor filed his second amended chapter 12 plan of reorganization. The court held a telephone hearing and denied confirmation as the debtor wanted to "resolve the issues" with two of the objecting parties. On January 31, 2012, Debtor filed the Third Amended Plan for confirmation.

This bankruptcy case was filed primarily to halt the foreclosure action by Sirius against the Debtor. It is basically the continuing conflict between the Debtor and Sirius as there are nominal other claims filed in this case.[2] The conflict between the Debtor and Sirius is premised on a promissory note that the Debtor signed in 1999. The Debtor also signed a mortgage granting Sirius a security interest on 167.35 acres in Caribou County, Idaho. After protracted litigation, the Idaho Supreme Court affirmed a lower court's judgment in favor of Sirius. A judgment was entered for a total amount of $55,101.72, with accruing post judgment interest and attorney fees and costs. Sirius filed a claim in this bankruptcy case in the amount of $118,947.00 as of March 23, 2011. The claim continues to accrue interest at the Idaho statutory interest rate of 7.625 percent for 2011.

---

[2] The Third Amended Plan provides for payment of the priority claim to the Lincoln County Treasurer in the amount of $2,236.00; unsecured claims to: Smith Driscoll & Associates for the claim amount of $34,093.49; and Greenline Equipment LLC in the amount of $24,770.58.

Page 2

Debtor testified that he owns 167 acres in Idaho and 132 acres in Wyoming which are assets of his bankruptcy estate.[3] His Third Amended Plan proposes to sell 40 acres from the Idaho property to pay the claims. He intends to change his farming operation to generate income. Mr. Erickson also testified that, if necessary, he is an experienced truck driver and would get a job driving truck to subsidize his income to insure that the plan payments are paid.

The Debtor's Third Amended Plan proposes to rely upon the sale of the 40 acres, income from farming and possible income from Debtor's employment as a truck driver to fund the plan. Upon approval of the court, the Debtor retained Val Pendleton, as the real estate broker to market the 40 acres. Mr. Pendleton testified that based upon his analysis, the 40 acres are valued at $417,717.00. The property has been listed for sale since early summer of 2011, with no offers at this time. Debtor's Third Amended Plan proposes that if the 40 acres,

> "is not under contract on or before September 15, 2013, the property will be advertised and sold at public auction on or before November 30, 2013. If the property has not sold by private treaty and the Debtor has not scheduled an auction by October 1, 2013 or if the proceeds from the auction are not sufficient to make all schedule plan payments, the Chapter 12 Trustee shall auction the entire property on which Sirius holds a lien. The sale or auction proceeds shall be paid to the Trustee for distribution according to the plan."

Additionally, the Debtor proposes to fund his plan from farming operations, projecting that the 2012 income will be $83,898.00 with expenses of $48,434.00 leaving

---

[3] The Idaho acres are encumbered by the mortgage and judgment in favor Sirius. The real property in Wyoming is unencumbered.

Page 3

a net income of $35,462.00 to fund the plan. Debtor projects his 2013 income at $83,758.00 and expenses of $53,209.00, leaving a net income of $30,549.00 to fund the plan. In the event that the farming operations fail to realize the income projections, the Debtor "plans to" pursue re-employment as a truck driver.

**Discussion**

Sirius objects to confirmation of the plan alleging: (1) the plan is not feasible; (2) the plan is speculative; and, (3) the Debtor proposes to sell only a portion of his assets to pay claims. The Trustee objects to confirmation of the plan, alleging: (1) the plan is not feasible; (2) the plan does not comply with §1225(a)(4) as unsecured creditors should receive the same as they would if the case was a chapter 7 liquidation case; and, (3) the plan does not allow for the payment of Trustee's expenses or compensation until after the Idaho real property is sold.

A Chapter 12 bankruptcy debtor bears the burden of establishing all elements necessary for confirmation of a reorganization plan.[4] The Chapter 12 debtor is not required to guarantee the success of the reorganization plan, they must provide reasonable assurance that the plan can be effectuated.[5] A chapter 12 bankruptcy reorganization plan's income projections must be based on concrete evidence and must not be speculative or conjectural.[6]

---

[4] *In re Novak*, 102 B.R. 22, 24 (Bankr. E.D.N.Y. 1989).

[5] *In re Hopwood*, 124 Bankr. 82, 86 (E.D. Mo. 1991).

[6] *Novak* at 24.

Page 4

Section 1125 governs the confirmation of a Chapter 12 plan. The sections relevant to confirmation of this plan, state,

"(a)   The court shall confirm a plan if–
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than that amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date...;
(5) with respect to each allowed secured claim provided for by the plan–
(A) the holder of such claim has accepted the plan;
(B)(i)   the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less that the allowed amount of such claim; or
(C)   the debtor surrenders the property securing such claim to such holder.
(b)(1) If the trustee...objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim;
(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
(C) the value of the property to be distributed under the plan in the -year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first distribution is due under the plan is not less than the debtor's projected disposable income for such period."

Feasibility

The Debtor testified regarding the changes to the farming operations that he is implementing to provide income to fund the plan. The court found the Debtor to be experienced in farming operations and based upon his conservative projections it appears

that the Debtor can produce the income as stated. Additionally, the Debtor appears to have, for lack of a better description, "a back-up plan," that of obtaining employment as a truck driver to subsidize the income necessary to fund the Third Amended Plan. Therefore, the court finds that the Third Amended Plan is feasible.

Objection of secured creditor

The court found previously and was provided testimony again at this evidentiary hearing that the value of the 40 acres acreage shows that the property is valued in excess of the total amount of claims filed in the case. The Third Amended Plan provides the secured creditor, Sirius, the retention of the lien securing its claim and the value of the property is not less that the allowed amount of Sirius' claim. Therefore Sirius' claim is protected under the Third Amended Plan.

Liquidation analysis

The liquidation analysis requires that a plan provide that unsecured debtors be paid the same amount as they would receive if the case was chapter 7 liquidation case. The court's analysis reflects that the contingencies built into the Third Amended Plan provide the Debtor far more protections than provided to creditors. The Third Amended Plan proposes to allow the Debtor until November 2013 to sell the 40 acres by private contract. In the event that fails, the Third Amended Plan provides that the 40 acres would be placed for sale at public auction. In the event that sale fails to bring the appropriate amount of proceeds to pay the plan as proposed, the Debtor proposes to have the Trustee sell the entire 167 acres in Idaho. The problem is that Sirius has a lien on the

entire 167 acres and potentially could, and would as stated by Sirius' counsel, "credit bid," at that sale, obtain the property for the amount of its claim, leaving no proceeds for unsecured creditors. It appears that the Third Amended Plan is speculative in its handling of the liquidation analysis.

The Trustee argued that all of the property of the estate should be available for public sale at the end of the time that the Debtor attempts to sell the 40 acres by private sale to insure that the Third Amended Plan pays as proposed. As stated at the hearing, all the property that the Debtor owns is property of the bankruptcy estate. This court does not find it equitable or in good faith to parse out the estate's assets for payment of the claims with the hopes that the unsecured creditors would realize a distribution. This court denies the confirmation of the plan, based upon its failure to comply with §1225(4).

Trustee's fees

The court also has reviewed the Third Amended Plan regarding the proposal for paying the Trustee's fees. Based upon the statements of Debtor's counsel, the court understands that the Debtor is willing to re-work this section so the Trustee is not put in the position of being the Debtor's "bank" for the expenses incurred while administering this case.

In conclusion, the Court agrees with the Trustee, that the proposed plan fails to comply with §1225(4), the liquidation analysis.

The court is aware that this Debtor has been in bankruptcy with this case for nearly 16 months. Therefore, the court will order that the Debtor file an Third Amended Plan within 14 days.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 26 day of April, 2012

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Judith Shively
    Patrick Hunter
    William Bagley
    Mark Stewart